UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

v.

MATTHEW PIERCE,
    Defendant.

Case No. 2:16-mc-51572-SJM

Hon. Stephen J. Murphy, III

## SPECIAL MASTER'S REPORT AND RECOMMENDATION

### I.    Summary of Pertinent Facts

On April 21, 2016, Defendant pled guilty to health care fraud and illegally buying and selling prescription drug samples. [*U.S. v. Pierce*, Case No. 16-CR-2002, ECF No. 13, Plea Agreement]. He was sentenced to 18 months of incarceration, followed by 24 months of supervised release, and most importantly for the purposes of this R&R, to pay $649,632.04 as restitution. [*Id.*, ECF No. 20 in criminal case].

Six months later, the United States instituted this civil action, seeking a writ of garnishment as to Defendant's Simplified Employee Pension Individual Retirement Account [ECF No. 1 Page ID.1 *et seq.*]. The Court then issued a writ of

garnishment as to Defendant and Garnishee Raymond James & Associates. [ECF No. 6]. Raymond James disclosed $467,295.09 in the IRA. [ECF 7].

Defendant objected [ECF No. 11], the United States responded [ECF No. 12], and on September 3, 2019, the Court overruled Defendant's Objections, allowing the United States to garnish the IRA [ECF No. 14]. A couple of days later, the Court ordered Raymond James to "remit these funds, up to the balance of $647,909.29 currently due" to the Clerk of Court [ECF No. 15, Page ID.64].

Defendant moved to quash that order, citing the 10% penalty for IRA withdrawals and asserting that liquidation would "cost him approximately $150,000 to $200,000 in taxes and penalties[.]" [ECF No. 17, Page ID.70]. Defendant asked for six months to sell his resulting properties and transfer the funds to the United States. [*Id*.] The United States opposed this for many reasons, *inter alia* that he had already delayed more than three years before offering to sell his real estate, that the possibility of a personal tax liability "is not an unexpected outcome" [ECF No. 21, Page ID.93], was not raised in his objection filed three years earlier, and that he "should bear the tax consequences of his failure to pay restitution in a timely manner." [ECF No. 21, Page ID.95].

Defendant made several filings in response. Most pertinent here is his allegation that "On September 19, 2019, $488,000 was taken out of Defendant's

2

IRA and given to the government, while another $75,000 was paid over the State of Michigan and the government in withheld taxes." [ECF No. 24, Page ID.141][1]

On November 10, 2019, the Court granted in part and denied in part Defendant's Motion to Quash, providing a 60-day stay of the order to pay, until January 6, 2020. [ECF 25, Page ID.146.] But as the United States had previously advised, Raymond James had already remitted the account's funds to the Clerk of Court on September 19, 2019. [ECF 26, Page ID.148]. Therefore, the IRS's 60-day rollover window expired on November 18, 2019. Defendant requested that the funds be returned. [*Id.*]

Defendant moved to hold the United States in contempt [ECF 26, Page ID.147 *et seq.*]. The United States responded, pointing out that the U.S. Attorney's Office has no control over these funds because Raymond James had paid them to the Clerk of the Court. [ECF 27, Page ID. 151]. In the criminal case, the Clerk of Court had been ordered to pay the U.S. Department of Health and Human Services to make restitution to Medicare. [U.S. v. Pierce, 2:16-CR-20021, ECF No. 20, Page ID.122].

---

[1] The United States later confirmed that "Raymond James withheld $57,005.26 for federal withholding and $24,227.24 in State of Michigan withholding taxes" and that the remainder, $488,708.33 had been paid to the Clerk of Court [ECF No. 27, PageID.152-53.]

3

On December 9, 2019, the Court denied Defendant's motion and appointed me as Special Master under Fed. R. Civ. P. 53. [ECF No. 30, Page ID. 162.] The Court charged me with determining "whether it should order the return [of] the funds and whether it should sanction the Government." [ECF No. 30, Page ID. 167.]

The United States moved to reconsider. [ECF No. 34, Page ID. 174.] The United States stated that just three days after the Court's order was issued, it had contacted Defendant's counsel and advised that an additional order would be needed to release the funds. [ECF No. 34, Page ID. 175.] The United States also described, in great detail over several pages, what had happened during the week between the issuance of the Court's order on Sunday, November 10, 2019 and the filing of its Response on Monday, November 18 [ECF No. 34, Page ID. 181-83]. I will not rehash all of that here, except to say that the Court found the United States's counsel's explanation convincing.

Given the uniquely bad timing of the United States's filing, on the 60th day after the transfer, the Court's initial skepticism was unsurprising. Still, the Court accepted the explanation and found that the circumstances fell short of the required "clear and convincing evidence" required to invoke the Court's inherent power to impose sanctions. *Ali v. Torbert*, 636 F.3d 622, 627 (D.C. Circ. 2011). Therefore, the Court modified its previous Order, limiting the scope of the

4

appointment. [ECF No. 35, Page ID. 200]. The narrowed scope was now "to determine whether those tax liabilities could still be avoided if the Court were to return the funds in the future in order to determine whether the Court's prior equitable determination to return the funds could be effectuated." [ECF No. 35, Page ID. 201].

The United States, undeterred, filed yet another motion for reconsideration, arguing that the Court lacked jurisdiction to determine tax consequences and therefore could not request an advisory opinion from the Court. [ECF No. 36, Page ID. 203]. It also pointed out that Defendant retains the ability to challenge the assessment in the United States Tax Court, citing 26 USC §§ 6212-13. [ECF No. 36, Page ID. 207].

The Court denied the Motion for Reconsideration, explaining that the Court is not asking the Special Master to determine the Defendant's tax liability. [ECF No. 36, Page ID. 211]. Instead, the Court is asking the Special Master to "clarify whether it could still effectuate the equitable goals of its November 10, 2019, order by issuing a subsequent order that would require the funds to be returned to Defendant's account." [ECF No. 36, Page ID. 211].

This case has been pending for 4½ years, since the fall of 2016. For the first three years after the garnishment was filed, until the fall of 2019, very little

5

happened. The litigation from the fall of 2019 to the spring of 2020 is summarized above. For the following six months, the undersigned was under the misimpression that the motions for reconsideration were still pending until a discussion with the Court in the fall. The delay over the past six months is solely the responsibility of the undersigned, for which I apologize to the Court and the parties. In the interim, I have discussed the case with both counsel for the United States and counsel for Defendant, both separately and together.

Based on the facts above, below I make my recommendation and report.

**II.     Report and Analysis**

For the reasons below, I recommend entry of an order that would give Defendant the opportunity to effectively reverse the effects of the previous transfer that resulted in tax penalty. Whether Defendant's tax liability will actually be reduced, is of course, solely within the bailiwick of the IRS, not the Department of Justice or this Court.

Counsel for United States and Defendant agreed on most, but not all, of the potential options available to Defendant. They both pointed me to helpful IRS documents, which in turn led to others.

The general and familiar rule is set forth in IRS Revenue Procedure 2016-47, Waiver of 60-Day Rollover Requirement (https://www.irs.gov/pub/irs-drop/rp-16-

47.pdf): that any amount distributed from an IRA will be excluded from income if it is transferred to an eligible retirement plan within 60 days following receipt. *See* Section 2.01. Per the IRS publication entitled "Retirement Plans FAQs relating to Waivers of the 60-Day Rollover Requirement," once the 60 days have elapsed, there are three ways to make a late rollover contribution:

> Yes, you can make a late rollover contribution – rollover after the expiration of the 60-day period - if you:
> 1. Are entitled to an automatic waiver of the 60-day rollover requirement,
> 2. Request and receive a private letter ruling waiving the 60-day requirement,
> 3. Qualify for and use the self-certification procedure for a waiver of the 60-day requirement.

See Retirement Plans FAQs relating to Waivers of the 60-Day Rollover Requirement | Internal Revenue Service (irs.gov).

I will address each of these three options.

Regarding Option No. 1 above, I can be brief: because none of the five listed automatic waiver conditions apply to Defendant (*see Id.*, Section 3), it is not available for him.

Option No. 2 above is seeking a private letter ruling, which is essentially applying for a waiver, which I will refer to as the "Waiver Option." Section 2.04 of Rev. Proc. 2016-47 explains the Waiver Option. It cites Internal Revenue Code, 26 U.S.C. Sections 402(c)(3)(B) and 408(d)(3)(I) as providing that "the Secretary may

7

waive the 60-day rollover requirement 'where the failure to waive such requirement would be against equity or good conscience, including casualty, disaster, or other event beyond the reasonable control of the individual subject to the requirement.'"[2] This, to the undersigned, more versed in contract law than tax law, appears to be akin to a *force majeure* exception. Among the factors to be considered are "(2) inability to complete a rollover due to death, *disability*, hospitalization, *incarceration*, . . . ." p. 360 (emphasis added). While Defendant was not incarcerated when the transfer occurred, he was previously incarcerated and alleges that he has "medical problems and is currently unable to work," at least as of 18 months ago, in September 2019. [ECF No. 17, Page ID. 72]. Moreover, the factual circumstances of the involuntary transfer are highly unusual; this was the antithesis of a voluntary withdrawal, and may be may be viewed positively by the IRS.

The Waiver Option is further explained in the above-referenced FAQ: "You can request a private letter ruling according to the procedures outlined in Revenue Procedure 2003-16 and Revenue Procedure 2020-4. The appropriate user fee of

---

[2] This was an amendment in Section 644 of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107–16. See Rev. Proc. 2003-16 at irb03-04.pdf (irs.gov).

$10,000 must accompany every request for a waiver[.]" *See* Rev. Proc. 2003-16 irb03-04.pdf (irs.gov). It does not appear that a waiver is conditional upon the money being returned to the original account.

The drawbacks for the Waiver Option for Defendant are two. First, he would have to pay $10,000, but this a much lower sum than having to come up with the funds to make restitution to Medicare (see discussion below). Second, he would also have to weigh the odds of the IRS granting a waiver. As the United States's counsel repeatedly pointed out, the decision regarding a waiver is entirely up to the IRS, not to the Department of Justice.

Depending on Defendant's financial wherewithal, the Waiver Option of attempting to obtain a "private letter ruling" may be his only realistic chance of having the tax penalty waived. Per my recommendation below, I recommend that Defendant be given every opportunity to do so.

Option No. 3 above is explained in Rev. Proc. 2016-47 (Exhibit 1). Taxpayers may do a "self-certification" regarding their reasons for missing the 60-day deadline. *Id*., Section 3.02. I will refer to this as the "Self-Certification" Option. Of the listed criteria (a) through (k), only (j) appears potentially applicable: "(j) the distribution was made on account of a levy under section 6331 and the proceeds of the levy have been returned to the taxpayer." Internal Revenue Code Section

9

6331(b) defines "levy" broadly: "The term 'levy' as used in this title includes the power of distraint and seizure by any means." "Distraint" means "to force or compel to satisfy an obligation by means of distress." [Distraining | Definition of Distraining by Merriam-Webster (merriam-webster.com)](). Therefore, it appears that any forced payment of an obligation would constitute a "levy" and hence the garnishment at issue in this case would qualify. The advantages of this option are obvious: they allow taxpayers to return money back into an IRA and self-certify that they met that criteria.

    The drawback with Option No. 3 is that Defendant must have the $488,708.33 to make restitution to Medicare. If he does not, then choosing this option would be for naught because he would have to simply return the money anyway. During discussions with Defendant's counsel, he advocated for recommending an order requiring the Clerk of Court to return the money to his Raymond James account. This overlooks, however, the possibility that Defendant lacks the money to make restitution to Medicare. Either Defendant has $488,708.33 or he doesn't. If he does, then he can first make restitution to Medicare, and the Clerk of Court can *then* return the garnished $488,708.33 to his Raymond James account, and he can make his self-certification to the IRS. If Defendant does not have the money, I do not recommend that the Court make this

option available to him, because it would require several steps — from the Clerk of Court to Raymond James, then the United States would have to re-garnish, then Raymond James back to the Clerk of Court, and then finally from the Clerk of Court to HHS/Medicare — that would inefficient and wasted effort. Medicare has already waited several years for restitution, and Defendant has had several years to liquidate any assets. If Defendant is unable to make restitution, the United States should not have to re-garnish the Raymond James account, and the Clerk of Court should forward the garnished funds to HHS/Medicare.

Finally, it's worth remembering that Defendant has a third option: he can challenge the penalty in the Tax Court. 26 USC § 7422.

### III. Conclusion and Summary of Recommendations

For the reasons stated above, my recommendation comes in two stages. First, I recommend the Court enter an order giving Defendant 30 days to advise the Court in writing whether he is financially able to make full restitution and prefers the Self-Certification Option, defined above.

Second, if Defendant indicates that he *is* financially able to make restitution and chooses the Self-Certification Option, then I would recommend that the Court enter an order requiring the following in order:

1) Defendant pay $488,708.33 to the Clerk of Court;

2) Upon receipt of those funds from Defendant, the Clerk of Court will then: a) forward them to HHS/Medicare to effect restitution; and b) return the garnished funds to Defendant's Raymond James account.

   Defendant will then be free to pursue the Self-Certification Option with the IRS.

If, however, Defendant indicates that he is *not* financially able to make restitution, then I would recommend that the Court order the Clerk of Court to release the garnished funds to HHS/Medicare, leaving Defendant either the Waiver Option or Tax Court as avenues to seek a refund of the tax penalty.

Per Fed. R. Civ. P. 53(f)(2), the parties may object and seek review of this Recommendation within 21 days.

Respectfully submitted,

Dated: March 17, 2021   By:  /s/ Daniel N. Sharkey
Daniel N. Sharkey (P53837)
Brooks Wilkins Sharkey & Turco PLLC
401 S. Old Woodward Ave., Suite 400
Birmingham, Michigan 48009
248-971-1712; sharkey@bwst-law.com
Discovery Master